UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MONSANTO COMPANY AND )
MONSANTO TECHNOLOGY, LLC, )
)
    Plaintiffs, )
)
v. ) Case No. 2:07-CV-00283-RLY-WGH
)
VERNON HUGH BOWMAN, )
)
    Defendant. )

## DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFFS

TO:   Monsanto Company and Monsanto Technology, LLC
c/o Mr. Peter J. Sacopulos, Its Attorney
Sacopulos, Johnson & Sacopulos
676 Ohio Street
Terre Haute, IN 47807

Monsanto Company and Monsanto Technology, LLC
c/o Thompson Coburn, LLP
Mr. Raymond L. Massey, Its Attorney
Mr. Daniel C. Cox, Its Attorney
Mr. David B. Jinkins, Its Attorney
One US Bank Plaza, Suite 2600
St. Louis, MO 63101

The following Interrogatories are submitted to you to be answered in writing under oath within 30 days after the date of service.

Instructions for Answering:

A.    You are required to choose one of your proper employees, officers, or agents to answer the interrogatories and the employee, officer, or agent shall furnish such information as is known or available to the organization.

B.    When an interrogatory calls for an answer in more than one part, the part should be separated in the answer so that they are clearly understandable.

C.  You are reminded that all answers must be made separately and fully and that an incomplete or evasive answer is a failure to answer.

D.  You are under a continuing duty seasonably to supplement your response with respect to any question directly addressed to the identity and location of persons having knowledge of discoverable matters, the identity of each person to be called as an expert witness at trial and the subject matter on which he is expected to testify and to correct any response which you know or later learn is incorrect.

E.  Monsanto means either or both Plaintiffs in the subject litigation and the knowledge of Monsanto, as set out in Instruction A above includes all knowledge of the organization including that possessed by the directors, officers, agents, employees, representatives, subsidiaries, attorneys, or investigators.

## DEFINITIONS

1. **GMO:** refers to genetically modified organisms

2. **Commodity mixed grain:** refers to the same type of grain such as soybeans, but of different traits such as non-GMO and GMO

3. **Out bound grain:** refers to grain that grain dealers sell to processors, other dealers, or farmers who may feed the grain or plant it if they so desire.

4. **R R beans and R R soybeans:** Refers to Roundup Ready Soybeans patented by Monsanto.

5. **Terminator gene:** refers to a gene that causes a plants seed to be sterile.

6. **Mixed soybeans:** refers to a mixture of non-GMO and GMO soybeans

## INTERROGATORIES

### INTERROGATORY NO. 1:

Please state Monsanto's positions and demands placed on farmers who use their patented seeds; include the following.

(a) Does Monsanto authorize farmers to sell Monsanto's patented grain to the grain dealer of their choice.

(b) Does Monsanto require farmers to tell grain dealers they are delivering patented grain

(c) Does Monsanto require farmers to store non-patented grain and patented grain seperately.

(d) Does Monsanto require farmers to take the necessary precautions needed to prevent Monsanto's patents from invading their neighbors fields.

(e) Does Monsanto require farmers to sell their patented traits to preapproved grain dealers.

(f) Does Monsanto require farmers to warn dealers not to sell their patented grain to anyone who might later plant that grain.

(g) Does Monsanto's Growers' Agreements prevent farmers from going to grain dealers and purchasing grain to plant.

ANSWER:

INTERROGATORY NO. 2:

In order to protect Monsanto's seed patents and prevent infringement what action has Monsanto ask grain dealers to take. Please answer these yes and no questions.

(a) Has Monsanto asked grain dealers to refuse to sell grain to farmers they might suspect will plant the grain.

(b) Has Monsanto ever warned grain dealers not to sell grain to farmers if they knew or thought that some of the grain might contain patented traits.

(c) Has Monsanto ever threatened to sue a grain dealer if he sells grain to a farmer who later uses the grain as seed.

(d) Has Monsanto ever sued a grain dealer for selling outbound or commodity mixed grain to a farmer that later planted the grain which contained patented traits.

(e) Has Monsanto asked Huey Soil Service not to sell Defendant any outbound grain.

(f) Has Monsanto threatened legal action against Huey Soil Service if they continued to sell outbound grain to Defendant.

ANSWER:

INTERROGATORY NO. 3:

Monsanto claims their Roundup Ready soybean Utility patents 605 and 247 are not exhausted. Please answer the following questions with as many details as practical.

(a) Why does Monsanto claim the 1st Sale Doctrine of Patent Exhaustion does not apply to commodity soybeans owned by grain dealers.

(b) Does Monsanto consider the farmer who grows authorized Roundup Ready Soybeans to be the owner of the purchased seed or the licensee of said seed with restrictions placed on his use of the seed.

(c) When a farmer plants authorized patented Roundup Ready Soybeans, what restrictions does a grower's agreement place on the farmer.

(d) By signing a grower's agreement with Pioneer, a farmer is authorized to grow R R Soybeans to sell to the grain dealer of his choice. How can Monsanto claim that a farmers sale to a grain dealer puts restrictions on that dealer's right to sell his product to whoever he chooses.

(e) What changes were made to the Utility Patent laws that allowed inventions capable of reproducing themselves to be patented by Monsanto.

(f) What, if any were the special privileges given to Monsanto for inventions that can reproduce themselves.

(g) Where in Pioneer's or Monsanto's grower's agreements does it demand that the farmer's sale of 2nd generation R R beans to a licensed grain dealer be a conditional sale.

(h) What law exist that causes a farmers sale of 2nd generation R R beans to a licensed grain dealer to be a conditional sale.

(i) How does a licensed grain dealer know if he is buying soybeans under a conditional sale or an unconditional sale.

(j) Since no law prevents a licensed grain dealer from mixing R R soybeans with conventional soybeans in storage bins; how can Monsanto claim the sale of mixed soybeans from a grain dealer to a farmer be a

5

INTERROGATORY NO. 3 continued:

conditional sale subject to patent laws.

(k) Does Monsanto consider it illegal for a licensed grain dealer to sell a farmer out bound soybean grain if the dealer knows some of the grain contains Roundup Ready traits and the farmer intends to plant the grain. If so why.

ANSWER:

INTERROGATORY NO. 4:

Defendants grower's agreement was issued to Pioneer and all of defendants Roundup Ready seed that was used in 2007 and 2008 was purchased from Pioneer. Monsanto never mentioned anything to Pioneer and never showed defendant any legal documents preventing him from using Pioneer seed. Monsanto did tell defendant that he was not authorized to use their patented traits. Did <u>not authorized</u> mean unlawful. How does Monsanto justify claiming that defendant was not authorized to buy Pioneer seed when Pioneer was given a license to sell Monsanto's patented traits.

ANSWER:

INTERROGATORY NO. 5:

Defendant understands that Monsanto has a terminator gene that was patented in 1998 that could prevent the infringement of their 605 and 247 patents. Please explain the following.

(a) Would the terminator trait prevent farmers who wished to plant commodity grain from accidentally using grain with patented traits.

(b) Would farmers who saved their own seed be safe from unknowingly planting seed that was contaminated with patented traits.

(c) Would the terminator gene prevent unwanted invasions into neighboring fields; thus elimenating legal problems caused by trait invasions.

(d) Why hasn't Monsanto used this patent to prevent infringement of their 605 and 247 patents and eliminate the need of lawsuits.

(e) Will Monsanto assure the Court that they have not deliberately refused to use the terminator gene because they wish to eliminate the use of commodity grain as a source of seed forever.

ANSWER:

INTERROGATORY NO. 6:

Does Monsanto consider it illegal to plant commodity grain purchased from licensed grain dealers if the grain contains Monsanto's Roundup Ready soybeans; even if the farmer does not use glyphosate as the weed killer. If so why.

ANSWER:

INTERROGATORY NO: 7

How many lawsuits has Monsanto filed against farmers who have bought out bound commodity soybeans from a grain dealer and then planted them for a cash crop. Please indentify each farmer and explain his illegal activity.

ANSWER:

8

INTERROGATORY NO: 8

In Pioneer's grower's agreement where it refers to the transferring of seed, the solution of handling left over seed is not clear. Please explain Monsanto's position on the issues below.

(a) A farmer has patented seed left over whose orginal container has been opened. What is he suppose to do with the seed when no label can guarantee the variety or type of seed.

(B) A farmer sells his excess patented seed to a grain dealer who mixes it with other varieties. Is this a conditional sale or an unconditional sale and why.

(c) Farmer A has agreed to plant farmer B's field with soybeans. The planting farmer(A) has filled his planter with patented soybeans to plant on his own land. An unexpected rain enterfers. Farmer (A) then calls farmer (B) to find out if his field is wet. Farmer (B) said it was dry and agreed to pay for the beans in the planter. Did farmers (A) and (B) violate a grower's agreement and why.

(d) A farmer has finished planting beans, but has a substantial amount amount of treated patented beans left in his planter. What are his options in disposing of this seed.

ANSWER:

## INTERROGATORY NO: 9

It has occurred to Defendant that Monsanto's calling their patented product by the name of Roundup Ready Soybeans is misleading and a misnomer. Please answer the related issues below.

(a) Where in nature has a soybean plant shown resistance to Glyphosate.

(b) Please justify man's invention being named the same as a natural occurring item.

(c) When plants have different traits isn't it customary for biologists to call them different names.

(d) If Roundup Ready Soybeans were naturally occurring plants, would Monsanto have been given a Utility Patent.

(e) Please explain why the United States Patent and Trademark Office did not err in giving Monsanto the trademark of Roundup Ready Soybeans when Monsanto's invention cannot logical be called a soybean because their invention has very different traits.

(f) What do biologists consider the scientific name of Monsanto's patented legume.

ANSWER:

INTERROGATORY NO: 10

Defendant has read that if a farmer represents a field of soybeans to be non-GMO and monsanto finds as little as one plant that tests positive in that field, Monsanto considers that patent infringement regardless of whether the farmer used conventional chemical on the crop. Please answer the related questions below.

(a) Does Monsanto have any legal responsibility for controlling the spread of their patented traits into fields where they are unwanted.

(b) If a farmers non-GMO corn gets pollinated by GMO sources; whose responsibility is it to pay for economical damages should the farmer's crop be refused by non-GMO buyers.

(c) Monsanto patents a rabbit that has the world's finest and most demanded fur. That rabbit patented trait excapes into the wild rabbit populations. Does Monsanto now own all wild rabbits with the patented genes.

(d) When Monsanto is allowing and encouraging grain dealers to commingle non-GMO and GMO grains together; do they have the right to claim patent infringement if a farmer plants that grain.

(e) Monsanto has stated that they must do what is necessary to prevent seed cheaters and promote a level playing field for their farm seed customers. If all farmers are allowed to purchase grain from licensed grain dealers and plant that grain; how is the playing field tilted.

(f) If Monsanto allowed farmers to buy commodity mixed seed from grain dealers without the threat of a lawsuit, would farmers then forsake Monsanto's patented and licensed seeds.

(g) Is Monsanto trying to eliminate all sources of seed available to farmers, except those sources from commerical seed dealers with access to patented traits

INTERROGATORY NO: 10 continued

ANSWER:

Respectfully submitted by

*Vernon H Bowman*

VERNON HUGH BOWMAN
21488 E. State Road 58
Sandborn, Indiana 47578
telephone: (812) 694-7129

## CERTIFICATE OF SERVICE

I hereby certify that on _Oct 14, 2008_ a copy of the foregoing counter-claim was mailed, postage prepaid, to Peter J. Sacopulos of SACOPULOS JOHNSON & SACOPULOS at 676 Ohio Street, Terre Haute, Indiana 47807 plus a copy to THOMPSON COBURN LLP Attorneys Raymond L. Massey, Daniel C. Cox, David B. Jinkins at One US Bank Plaza, Suite 2600, St.Louis, MO 63101

*Vernon H Bowman*
Vernon H. Bowman
Defendant Pro Se